## Hoyer v. Frazee

*Bradley S. Gelder,* for plaintiffs.
*Henry O. Heiser, III,* for defendants.

SPICER, *P.J.,* December 4, 1980—This case comes before the court at this time on plaintiffs' motion for summary judgment on the question of liability.

The facts, established by admissions and allegations in the answer for purposes of this proceeding, involve a purchase of real estate by plaintiffs in 1973. In an agreement dated July 23, 1973 plaintiffs agreed to purchase land in Franklin Township, Adams County, containing "45 acres more or [l]ess." The agreement was partially printed and partially handwritten. Subsequent to the date of the agreement, several corrections and additions were placed therein.

The realtor then apparently submitted the agreement to plaintiffs for reapproval. After receiving it, they wrote to the realtor on August 15, 1973, stating that four matters in the agreement needed further clarification. One such matter was the description of the property. The agreement provided that the description was to be "by existing survey and new survey line between Karpers."

In the letter plaintiffs informed the realtor that "a deed plot in itself is unacceptable as a substitute for a formal *certified* survey." The court notes that the agreement has the word "certified" printed in hand two lines down from a ∧ pointing directly in front of the word "survey." It is not clear when this was inserted but there are initials and signatures in the margin of the agreement. Plaintiffs asked the realtor to contact plaintiffs' attorney (defendant Frazee) concerning the enumerated subjects of clarification.

On September 12, 1973 Mr. Frazee wrote to plaintiffs and said he had received a proposed deed copy. He advised plaintiffs to accept the deed as prepared. He said, "We have compared the description in the deed with existing surveys, as well as with the description in the Mapping Department of the Adams County Courthouse, and we are satisfied that, by local standards, this is a satisfactory description of the property to be conveyed to you. We feel that the description is as good a one as is required under the Agreement of Sale, and we will have no hesitancy in certifying title."

Mr. Frazee went on, however, to "point out that a title insurance company would insist on an exception being taken to the description, since it is not taken entirely from an up-to-date survey." The agreement provided: "Title is to be good and mar-

ketable and such as will be insured at regular rates by a responsible title insurance company . . . ."

When plaintiffs took title on October 1, 1973, there was excepted from the tract conveyed 3.261 acres said to have been previously conveyed by the grantors. There is in the pleadings no explanation of how this exception came to be. Following settlement, defendants issued a title certificate to the premises, described as "containing 45 acres, more or less, less, however 3.261 acres." The only exception in the title certificate was a utility right of way.

On March 10, 1977 defendant informed plaintiffs that the area conveyed contained approximately 32 acres.

Plaintiffs have moved for judgment on the pleadings in both assumpsit and trespass. However, all allegations in the complaint relating to liability in trespass were denied pursuant to Pa.R.C.P. 1045(a).

The issue posed by the motion in the assumpsit case is whether, assuming to be true all well pled facts in the answer and all admissions, a trial would be a fruitless exercise.

Plaintiffs have pointed to the letters exchanged between themselves, the realtor, and defendants. They say they asked for a survey, were told one was not needed and have suffered a loss as a consequence. They say the property description did not close. Defendants maintain that plaintiffs asked for a certified survey. Whether one was provided is not answered. Defendants further say that errors in description preventing closure are "typographical errors of an apparent nature." They further say that plaintiffs purchased what they intended to purchase, citing this court's recent decision in the part of a suit brought against grantors.

When sales are en gros, the presumption the deed conveys what plaintiffs intended to buy applies only between the grantor and grantee. It has no application in cases in which the purchaser sues his title attorney.

The general rule relating to liability of an attorney in title work is set forth in 7 Am. Jur. 2d, Attorneys at Law §207, as follows:

"An attorney employed to examine title to real or personal property must exercise reasonable care and skill in the matter, and the failure to do so is negligence for which he will be liable to his client in damages if his client is injured. This principle is applicable whether the examination is for a prospective purchaser, or a prospective lender.

"An attorney employed to examine title may be held liable for negligence in the determination of the amount or location of real property, or in the determination of a seller's or mortgagor's title. He must not overlook encumbrances such as mortgages or judgments or liens. Unless there is an understanding to the contrary, the title search must be carried forward to the time of closing title.

"An attorney in examining and reporting on a title is not a guarantor. He only undertakes to bring to the discharge of his duty a reasonable skill and diligence, and he is not liable for making a mistake with respect to a doubtful question of law.

"With certain exceptions, the liability of an abstracter is generally limited to those who employ him." (Footnotes omitted.)

Applying this standard, we cannot, as a matter of law, determine that defendants breached their duty. The allegations of the answer indicate defendants relied upon a certified survey. That and the rea-

sonableness of the reliance would be for the fact finder to determine.

The apparent discrepancies in the description will be a factor in determining liability. In the case of Owen v. Neely, 471 S.W. 2d 705, 59 A.L.R. 3d 1171 (Ky. 1971), an attorney pled that although he noticed some discrepancy in the survey he excepted matters of survey in his certificate. The Kentucky Court held that whether, upon discovering the discrepancies, the lawyer should have pursued an inquiry or reported to his client was a factual question.

The court points out at this time that defendants have also moved for judgment on the pleadings. The Owen case is especially applicable to their motion. Defendants' motion is denied.

We can summarize the following facts which are not in dispute:

(1) Defendants were employed to perform a title search.

(2) Plaintiffs asked defendants about the need for a certified survey, saying that a plot plan was unacceptable.

(3) The grantors were obligated to convey insurable title.

(4) Defendants represented that a survey was not necessary even though a title company would insist on a survey exception because the surveys were not up to date.

(5) No survey exception was placed in defendants' certificate of title.

(6) The description contained errors of an apparent nature.

Facts which are important but not established include:

(1) What records, surveys and drafts defendants considered.

(2) What, exactly, were the errors in the description.

Considering what is disputed we conclude that undisputed allegations fall somewhat short of justifying judgment on the pleadings. Despite the fact that defendants issued their certificate in the form in which they did, they did not guarantee the quantity of land. On the other hand, the certificate and the other established facts create, in this court's opinion, a rebuttable presumption of negligence: Davis v. Kerr, 239 Pa. 351, 86 Atl. 1007 (1913); Dux v. Shaver, 105 Pa. Superior Ct. 344, 161 Atl. 481 (1932); Robinson v. Wirts, 387 Pa. 291, 127 A. 2d 706 (1956); Smith v. Yohe, 412 Pa. 94, 194 A. 2d, 167 (1963).

Accordingly, the attached order will be entered.

## ORDER

And now, December 4, 1980, each motion for judgment on the pleadings is denied.